Good morning, your honors. Good morning. It is my pleasure. My name is Jason Holden. I represent Gary William Huffman. In this case, the government failed to prove beyond a reasonable doubt that Mr. Huffman exercised sufficient dominion and control over the drugs discovered in a blue Honda Accord that was registered in the name of another individual and found in the garage of Forest Dixie. Mr. Huffman asserts that the district court erroneously allowed the admission of an insurance card discovered in a camouflaged fanny pack in the passenger side of the vehicle and also erred in not granting his Rule 29 motion. How did the insurance card help? The insurance card was the key piece of evidence admitted by the government to tie Mr. Huffman to the actual possession of the Honda Accord. The testimony of the lead agent in the case was that Mr. Huffman's truck, which led the agents to Mr. Huffman, was registered in the name of Earl Lieberman, which the government alleged was an alias. The agent then testified that Earl Lieberman's quote-unquote fishing license was discovered in the Honda Accord. Then the government made the leap that the insurance card obviously was tied to Mr. Huffman because of the connection from the fishing license back to the original truck. It is Mr. Huffman's assertion that the insurance card was the only piece of evidence, actual evidence admitted during the trial that tied him to the actual possession of the Honda Accord. The fishing license was not admitted at trial. That was only the testimony of the lead agent. And the lead agent, when cross-examined regarding the true registered owner of the vehicle, the blue Honda Accord, acknowledged that it was not registered in Mr. Huffman's name but in the name of Ethel Welch, a woman who is completely unassociated with the case. Well, let's assume that even if we give you that, which I'm not necessarily giving you this, but even if we give you the insurance card issue, you say that that's the only evidence that connects Mr. Huffman to the Accord. There were three witnesses that testified that connected him to the Accord where the drugs were found. Dickey testified that Huffman had asked for a field restoration for the Accord, that Huffman had purchased the Accord from Kirkman for $500, and that Huffman had paid him $48 an hour to work on the gray truck and the gray Accord. Kirkman testified that she had sold the blue Accord to Huffman for $500, and Huffman took the only keys to the vehicle and that Huffman wanted Dickey to fix the Accord. And Beckman testified that she knew Huffman because Dickey was working on Huffman's gray Honda and that Huffman asked her to go to the back of the car to wrap marijuana. And she also testified that she retrieved marijuana from a red duffel bag in the back of the car. There was some discrepancies in the color of the Accord, the exact date of the purchase, and how the Accord got to Dickey's driveway, but the testimony does, in my view, I think undermine your argument that the insurance card was the only thing that connected your client to the car. If I may respond, Your Honor, Mr. Huffman's assertion is that the insurance card was the very first piece of evidence submitted at trial tying him to the ownership of the blue Honda Accord. Okay, but the first piece of evidence as opposed to the only piece of evidence are different arguments. Oh, I understand, Your Honor, and I believe that I should phrase the argument perhaps better. It's the only credible piece of evidence. First of all, Your Honor, Deborah Kirkman had actual possession of the Honda Accord at the time of trial. I think it is incredibly significant that if the Honda Accord did in fact belong to Mr. Huffman, the government did not forfeit the Honda Accord. Now, mind you, the government did forfeit the $8,000 that was actually closer to $9,000 discovered in the Honda Accord, but yet at the time of trial, the government did not seek to forfeit the blue Honda Accord, and Deborah Kirkman was driving it. Moreover, Your Honor, No, the sufficiency of the evidence is a pretty heavy rock to push uphill, and when you start saying things like, well, I think it was the only credible evidence or whatever, the jury did hear other evidence, and they resolved those credibility issues against your client, which really doesn't help a sufficiency of the argument, sufficiency of the evidence argument. I agree, Your Honor. I am in many ways pushing a noodle uphill with my nose. However, Mr. And I respect you for doing that. Mr. Huffman asserts, Your Honor, that if this piece of evidence had not been admitted, that he may have had an opportunity, a greater opportunity before the jury in view of Montana, to undermine the testimony of Mariah Beckman, which Judge Molloy recognized in chambers that for purposes of this case, she was a waif, and Mr. Roscoe, who prosecuted the case, recognized that her testimony was a disaster. I think the key testimony was the agent, the very first person who testified, and testified that the truck was registered to Earl Lieberman, I found a fishing license in the blue Honda Accord, and I found an insurance card tying Mr. Huffman to the 15 pounds of marijuana and 1.5 pounds of methamphetamine. Moreover, Your Honor, I think it is significant in this case that Mr. Huffman did not have an appropriate opportunity to further undermine the ownership issue, because it is not only whether or not he had access or ownership of the vehicle, but access to the Honda Accord. And the testimony in this case was that Deborah Kirkman had arranged with Mr. Dickey to fix the Honda Accord after Mr. Huffman was arrested, was driving at the time of trial. And I will remind the Court that her possession of the vehicle was within one to two months after Mr. Huffman was arrested. Your Honor, if I may move on to issue number two, and that is whether or not Mr. Huffman, whether there was sufficient evidence to convict Mr. Huffman of distributing methamphetamine to a person under the age of 21. Mr. Huffman's assertion is that if the Court reverses on counts 1 and 2, it must, therefore, reverse on count 3, because Mariah Beckman's testimony was that she obtained the methamphetamine from the blue Honda Accord. If Mr. Huffman did not have sufficient dominion or control over those drugs, therefore, there was not sufficient evidence to convict Mr. Huffman of distributing the methamphetamine to Ms. Beckman. I finally turn to the ---- Well, let me ask you, I think you're going to your last argument that has to do with the life sentence. Yes, Your Honor. Now, in Harmelin v. Michigan, the Supreme Court held that a statutorily mandated life sentence, that they're neither cruel or unusual, and your client here got a statutorily mandated life sentence. Yes, we did, Your Honor. So what should we consider in applying that precedent to your client's sentence? And I know that one of the things that you talk about is his mature age as an exception to the statutorily imposed life sentence, but I'm looking for support in that, and so if you can help me on that in terms of case law. Well, I think the case law itself, Your Honor, is that the United States Supreme Court did not foreclose forever the argument that a proportionality review is prohibited. Each case must be judged on and adjudicated on its own facts, and that's what I did in this case. I used the measuring recidivism study published by the Sentencing Guidelines Commission, which reflects that only 9.9 percent of convicted felons have a recidivism rate after the age of 50. I think the United States Supreme Court itself recognizes that each district court in this circuit is allowed to determine on the merits of each individual case whether or not, based on the facts, a life sentence is proportionate or not proportionate. And in this case, you're looking at an individual who is 60 years old who is sentenced to life for 15 pounds of marijuana and a pound and a half of meth, and that is certainly disproportionate to the crime of conviction. Now, of course, Judge Malloy rejected that argument and recognized that Mr. Huffman has a criminal history dating back to 1966, but when you take a look at the evidence and the true attributes of Mr. Huffman, he was a minor participant in drugs. The largest sentence that he had received or the longest sentence he had received prior to this sentence was 10 years, so what you have is 10 years to life just because it's a third conviction and the 851 was filed. And I just think that that's disproportionate, and Mr. Huffman thinks it's disproportionate. And I would recognize, Your Honor, that I think the government is correct. I think it's a de novo review with regard to the constitutionality of the sentence, and I just want to correct that in my brief. Okay. Thank you. Thank you for your argument. Good morning. Good morning, Your Honors. Eric Wolf from the District of Montana. Your Honor, you hit it right on the head with this argument about the ownership of the blue Honda. The insurance card was not a key piece of evidence by any stretch of the imagination. There were three witnesses, Forrest Dickey, Deborah Kirkman, and Moira Beckman, and they all said it was his car. And Moira Beckman said he told her to go to the trunk of the car in a red duffel bag and obtain marijuana, which would suggest that that's his marijuana, he knows exactly where it is, and he has it in that car. The insurance card, I think at one point counsel said the government made the leap that from the insurance card, therefore, it was his car. Actually, in the closing argument, the insurance card comes up just totally in passing. What the government points out is that you have three witnesses. And in order for him to prevail, he can only say, well, they're not credible. Three not very good witnesses, you know, but. I think they were more than good enough. And whether they're credible or not. The jury thought that. Yeah. Whether they're credible or not is for the jury to decide. We don't get to second guess that and say, well, I don't think they're credible. And, in fact, by all accounts, Moira Beckman on the stand was a very sad case. Here was a girl who started smoking marijuana at age 12, started using methamphetamine at age 14, was a regular user of marijuana and methamphetamine by age 15, and was using both with a friend of hers like on a regular basis, and admitted she still used marijuana. Well, does her credibility, she's the 15-year-old girl, undermine the sufficiency of the evidence for Huffman's conviction for the distribution of methamphetamine to a person under the age of 21? Does her credibility undermine it? Undermine the sufficiency? It can't. It can't. I don't see how a court of appeals can say, well, we've read the record, haven't seen any of these witnesses, and we just don't find them credible. So there you have it. We're going to overrule the jury. That's just not how sufficiency of the evidence works. And as we put in the brief, you can have the credibility of the jury. So essentially your argument is once the jury heard that and chose to resolve it against the defendant, that sufficiency of the evidence argument evaporated. He would have to have something on the other side of the scale. Like he would have to have his own testimony or some other witness who said, no, she's a liar. Well, but then if I'm to accept your argument, then even if he did have his own witnesses, wouldn't I be reweighing the evidence, even then? Well, but then he has something on his side of the scale that might create reasonable doubt. All we have now. But I guess what you say is we can't reweigh the evidence. Well, you can't judge her credibility unless you can show some clear contradiction that makes a difference. And he doesn't have anything like that. All we have, well, actually, she is corroborated in many respects because, first of all, in the ownership of the gray Honda, although people can't decide whether it's gray or light blue, but she's corroborated by her uncle, Forrest Dickey. She's corroborated by Deborah Kirkman. So she's not the only witness on that. With respect to her receiving methamphetamine and marijuana and using it, she's corroborated by her friend, I think her name was Scarlet, or Scarborough, who testifies right before her. And then she says, Huffman gave me methamphetamine and marijuana that very day that he was arrested, and I got it out of the trunk of the car. And lo and behold, there is a red duffel bag in the trunk of the car that's full of weed. So she's corroborated by hard evidence. She's corroborated by other witnesses. And his only claim is, well, you know, she's just this screwed-up teenager, and you can't believe her. Well, that's an awfully weak, sufficient-to-the-evidence argument. Mr. Wolf, let me back up a little bit before you get there now. The insurance card, as I understand it, was objected to for lack of foundation. That's right. What's the foundation? The foundation was we searched the car. It was found in the car, right? Yeah. Is that all there is to the foundation? It was found in the car, and the defense kept objecting. And they had done this on a couple previous pieces of evidence, sort of a chain-of-custody type of objection. And so the prosecutor leads the witness through, okay, what did you do? I took it out, and I put it in the bag, and what did you do? I wrote the number on it, and where did you put it? And has it remained there? And then we get to the end, and the defense still says, objection, foundation. And the judge actually at the exact page, the judge at Excerpts of Record 56 says, well, overruled. There's plenty of foundation. So then the judge says, you know, maybe there's a 401 or 402 issue, suggesting that, you know, maybe there's a relevance issue. And the only relevance is this is a guy who uses aliases. Or he might be a guy, it might tend to show that he's a guy who uses aliases. Later on, moments later in the trial, we learn that, in fact, he does use aliases. He uses the alias Earl Lieberman for the truck, which he's been using. What is the relevance of – isn't the fact that you use aliases just sort of make you look more criminal? I mean, most judges don't have, you know, Judge Callahan, a.k.a. Judge – Absolutely. Yes. Law-abiding people don't use aliases. Well, but I thought that the argument was that the relevance sometime of the alias was somehow that it was a nexus to possession of the vehicle and, therefore, to the drugs. It is in this sense. I mean, I don't buy that just showing that someone uses aliases. I think that the prejudicial would outweigh the probative on that. If there's a connection to the contraband and the car, then – Well, then he should have made a 403 objection, which he didn't make. And now he wants to say, oh, it's prejudicial and whatnot, but he never made that objection. He said there's no foundation. And the judge even said, you know, you should make – you know, maybe there's a 401, 402 issue, although I think that was resolved later on when they were talking about the ownership of the truck. But if he wanted to make a 403 objection, he was welcome. And even in his brief, he doesn't make a 403 objection. I mean, he does say it's extremely prejudicial, which is patent nonsense, because there were three witnesses who said that he owned the truck. Or, I'm sorry, owned the Honda. And this insurance card was just a total trivial piece of evidence that came in and, you know, had some marginal relevance on this alias issue, but was hardly a key piece of evidence by any stretch of the imagination. Was it Amy on the insurance card? That was the one question I didn't want to get this morning. I don't know, Your Honor. It wasn't his. It wasn't even his alias. It was not him, and it was not Earl Lieberman. In the closing, the prosecutor says it was a third name, and I honestly don't know what it is. I'm happy to write the court a letter. So the only relevance of it is that presumably somebody who has possession of the insurance card has needs it because he possesses the car. Sure. I'm happy to write the court a letter and explain that point if you would like me to. But, of course. But that makes it at least less relevant, right? Unless he's a guy who uses aliases. If there's a third name, no one knows who it is. Well, but it could be an alias, and he does use aliases. No evidence that it could be, but it's not relevant. Right? If you have an insurance card that says John Doe on it and say, yes, I want to admit this, what for? To show that John Doe possessed the car when there's nothing to say that, you know, Huffman used John Doe as an alias? It's thin, Your Honor. I'm not going to say that it isn't. But we learn. Isn't it thin to the point of nonexistence? Well, but then the issue is sufficiency of the evidence. And there's plenty of evidence. This was not key evidence. I'm not talking about sufficiency. I'm just talking about the relevance of the insurance card. In the absence of a relevance objection? Or maybe they should have made a relevance objection. I mean, the judge sort of prompted them to do that. I know what you said. The only, well, I guess the judge said, right, the objection should have been 402 or 403. Is that what he said? When they object and say objection foundation, the judge says there's plenty of foundation. Maybe you should raise 401, 402. That's excerpts record 56. But the defense never did. No. They raised foundation again. And, I mean, if I need to, let me just point out. I think the relevance is where it was found. It was found, an insurance card is something that goes with a vehicle. We know it goes with a vehicle. It was found in the fanny pack that also had a fishing license with his alias on it. And the drugs were found in the car, right? Right. So that's, I mean, I hate to make your argument for you, but if that's the. . . I am quite happy to have you do that. But if there's relevance, that would be the only relevance that I could see. I mean, basically, Agent Haney is on the stand. And the prosecutor passes him everything they found in the car. I mean, that's essentially what happened at trial, the drugs. And then he did the same thing for the Toyota truck. They had, like, a drug ledger from the Toyota truck. That's essentially what's going on here. And if I need to mouth the words harmless error, I am more than happy to, because it is abundantly harmless. This insurance card came in. It was hardly a key piece of evidence. The three other witnesses are more than sufficient. If there are no further questions. All right. There do not appear to be. Mr. Holden, I'll give you a minute for rebuttal. Thank you, Your Honor. If I may. . . So you make yours. I'll be brief, which are my famous last words. Okay. Judge Tashima, I think the important issue here is that the foundation objection was based on the dominion and control of the vehicle. That was the appropriate objection. Judge Molloy then raised 401 and 402. I don't think trial counsel Steve Haddon out of Helena was then required to say, well, me too, Judge. When Judge Molloy says the real objection is 401, 402, there's foundation overruled. I think 401 and 402 has been raised. And the significance here is that the confidential informant, which informed the agents of Mr. Huffman, first led them to the truck in front of Forrest Dickey's house. That truck was registered to Earl Lieberman. The government, in this case, did not admit the fishing license. That's nowhere in the record as a true document. That's just testimony. It's not. But there's testimony that there was a fishing license with the name of Earl Lieberman in the camouflage pack, right? Not in the camouflage pack, Your Honor. I apologize. That's in the vehicle. The fishing license was in the vehicle. It is unclear from the record whether or not that was in the camouflage pack. But the insurance card certainly was, and the insurance card did not have the name Earl Lieberman. And that is why Mr. Huffman asserts that this case should be remanded for a retrial where he can prove to the jury that he did not have dominion and control over the Honda Accord. Thank you. Thank you very much. Thank you both for your argument. This matter will stand submitted.
judges: Canby, Tashima, Callahan